**Witold A. ZIARNO, Plaintiff–Appellant,**

v.

**THE AMERICAN NATIONAL RED CROSS, Defendant– Cross Appellant.**

**Nos. 02–1147, 02–1253.**

United States Court of Appeals, Federal Circuit.

Jan. 7, 2003.

---

Before MAYER, SCHALL, and LINN, Circuit Judges.

LINN, Circuit Judge.

Witold A. Ziarno ("Ziarno") appeals from a judgment of the United States District Court for the Northern District of Illinois after a jury verdict. *Ziarno v. Am. Red Cross,* No. 99 C 3430 (N.D. Ill. June 28, 2001) *("Judgment"*). The jury found certain claims of Ziarno's United States Patent No. 5,887,273 (" '273 patent") infringed, but found that the defendant, The American National Red Cross ("Red Cross"), had proved by clear and convincing evidence that the claims of the '273 patent were invalid for failure to satisfy the written description requirement. *Judgment,* slip op. at 1. The jury also found certain claims invalid under either or both of 35 U.S.C. §§ 102 and 103. *Id.* The court denied Ziarno's motions for judgment as a matter of law and for a new trial. *Ziarno v. Am. Nat'l Red Cross,* No. 99 C 3430 (N.D.Ill. Nov. 13, 2001). Because substantial evidence supported the jury's finding of lack of written description as to the limitation "data packet transferring computer network," and because the inconsistencies in the jury verdict do not substantially affect the rights of the parties, we *affirm.*

## I. BACKGROUND

Ziarno's '273 patent issued on March 23, 1999; it is directed to a "method and system for interactive contributions solicitation and donation." The patent discloses a system including computerized "offering plates" for accepting contributions at a religious service, a clergy member's terminal, and communication links between the offering plates and the clergy member's terminal. The patent resulted from a divisional application filed on April 18, 1996, which claimed priority to an application originally filed on September 7, 1993. The issued claims recite, in part, a "computer implemented method of interactive fundraising across a data packet transferring computer network." '273 patent, col. 32, ll. 2–3. The "data packet transferring network" language was first added to the claims by supplemental preliminary amendment on September 3, 1996; the claims as originally filed in 1993 recited an "offering plate network."

Ziarno filed suit in May of 1999 against the Red Cross, alleging that the Red Cross' Internet-based fundraising system infringed certain claims of the '273 patent. The case was tried to a jury in June of 2001. The jury found, *inter alia,* that the Red Cross had proved by clear and convincing evidence that the claims of the '273 patent were invalid for failure to satisfy the written description requirement and that certain claims were invalid under either or both of 35 U.S.C. §§ 102 and 103. *Judgment* at 1. The jury further found that all but one of the asserted claims were infringed, but that the infringement was

not willful. *Id.* After the court entered judgment on the verdict, the Red Cross submitted a Rule 60 motion and a motion for judgment as a matter of law, and Ziarno submitted motions for judgment as a matter of law and for a new trial concerning willful infringement and the Red Cross' prior art and written description defenses. The district court denied all of these motions.

## II. DISCUSSION

### A

Section 112, first paragraph provides that "[t]he specification shall contain a written description of the invention." 35 U.S.C. § 112, ¶ 1 (2000). This requirement serves to ensure that an inventor actually had possession, at the time an application was filed, of subject matter that he first claimed only after filing the application. *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563, 19 USPQ2d 1111, 1116 (Fed.Cir.1991). Compliance with the written description requirement of Section 112 is a question of fact. *Waldemar Link, GmbH & Co. v. Osteonics Corp.,* 32 F.3d 556, 558, 31 USPQ2d 1855, 1857 (Fed.Cir. 1994) (citing *Utter v. Hiraga,* 845 F.2d 993, 998, 6 USPQ2d 1709, 1714 (Fed.Cir.1988)). In assessing whether the specification contains a written description of the invention, "[t]he fact finder must determine if one skilled in the art, reading the original specification, would immediately discern the limitation at issue in the patent." *Waldemar Link,* 32 F.3d at 558, 31 USPQ2d at 1857 (citing *In re Rasmussen,* 650 F.2d 1212, 1215, 211 USPQ 323, 327 (CCPA 1981)). In other words, patent claims will be held invalid for lack of written description support if the specification does not "indicate to persons skilled in the art that as of the [filing] date the applicant had invented what is now claimed." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.,* 309 F.3d 774, 779 (Fed.Cir. 2002) (quoting *Eiselstein v. Frank,* 52 F.3d 1035, 1038, 34 USPQ2d 1467, 1470 (Fed. Cir.1995)). An issued patent is, however, presumed to be valid, and this presumption can be overcome only by facts supported by clear and convincing evidence to the contrary. *Enzo Biochem, Inc. v. Gen–Probe Inc.,* 296 F.3d 1316, 1323, 63 USPQ2d 1609, 1612 (Fed.Cir.2002).

This court reviews a denial of a motion for judgment as a matter of law by reapplying the district court's standard; a district court will grant a motion for JMOL if, *inter alia,* the jury's factual findings are not supported by substantial evidence. *Minn. Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1300, 64 USPQ2d 1270, 1273 (Fed.Cir.2002). In its verdict, the jury found that the Red Cross had shown by clear and convincing evidence that the asserted claims were invalid for lack of written description support in the specification. In order to overturn the jury verdict that the claims did not comply with the written description requirement, Ziarno must show that such factual finding was not supported by substantial evidence.

In its Markman ruling, the district court construed the claim term "data packet transferring computer network" to mean

a computer system by which a block of computer information is broken into smaller information units called "packets." These packets are sent over a computer network over a variety of paths. The packets are automatically reassembled into their proper order at the receiving end.

*Ziarno v. Am. Nat'l Red Cross,* No. 99 C 3430, slip op. at 2 (N.D. Ill. Aug. 16, 2000). Ziarno does not challenge this construction. Nor does he argue that the phrase should not be construed as a claim limitation, because it appears in the preamble of

the independent claims. Rather, he argues that the '273 specification discloses a "data packet transferring computer network" as construed by the district court, and that the jury finding to the contrary was not supported by substantial evidence. We do not agree.

The text of the '273 specification does not contain the term "data packet transferring computer network." Nor does it at any point refer to data packets that are sent over a computer network via a variety of paths and reassembled into their proper order at the receiving end, as required by the district court's construction of the limitation. The Red Cross' expert witness, Professor Poor, opined that one of ordinary skill in the art would not have discerned the "data packet transferring computer network" in the '273 specification:

> Q. Would a person of ordinary skill in the art read the description of the '273 patent and conclude that the network described necessarily includes the transfer of data packets?
>
> A. No, they wouldn't.
>
> Q. In 1993 would a data packet transferring computer network be the first thing that came to mind after reading the description?
>
> A. No, it wouldn't.

Trial Tr. at 191. Poor described the basis for his opinion in detail:

> Now in the '273 patent and the specification it talks a lot about communications. The word "communications" appears very frequently and the word "communicate" appears very frequently as well.
>
> A lot of the communications talked about there is communications between the offering plate and the clergy member's terminal by way of communication links. And the links that are suggested there are quite simple. They are things like so-called infrared links, serial links, radio frequency links.
>
> Now these links are often direct path links so you don't really have a routing issue. If you have only one point-to-point link, there's no need to worry about routing from one point to the other. You can just send the data directly. Moreover, the types of things that are being communicated are relatively small files, that is, things like a few hundred characters at most data about the contribution. So we are not talking about transmitting long files over these links.
>
> So this kind of data, this could be communicated using what's called asynchronous transmission. That is, you just send the characters up, the characters being the alphabetical or numerical characters, up one at a time after putting them in some kind of code over the link to the recipient.
>
> So there's no reason to use data packets for that, not that you couldn't, but there's no reason why you would have to.

Trial Tr. at 189–90. Furthermore, even Ziarno's expert witness, Mr. Putnam, admitted that there was no disclosure in words in the '273 specification about either assembling or disassembling data packets. Trial Tr. at 128. The testimony of these expert witnesses, together with the absence of specific disclosure in the '273 specification of data packet transfer as construed by the district court, provides substantial evidence supporting the jury finding that the Red Cross had shown by clear and convincing evidence that all of the asserted claims were invalid for lack of written description support.

Ziarno's arguments do not compel a contrary conclusion. He draws our attention to several parts of the specification that he alleges provide support for the "data packet transferring computer network" claim limitation as construed by the district

court. In general, these sections of the specification involve communication between the offering plate and the clergy member's terminal, or between that terminal and a database or third-party card processor. The following text is representative of the disclosure in the '273 specification:

> In an alternate embodiment, key pad 890 and the cash donation acceptor 320 communicates information regarding the member's account and the donation to the clergy member's terminal 120, via communication link 140. The clergy member's terminal 120 then accordingly credits the member's church account, and might also be connected to a larger religious denomination database network via communication link 1030 to share member and donation information. In fact, the present invention contemplates that a member attending a church service located in a part of the country other than his regularly attended church service might have his religious organization account credited in his regularly attended church. The advantage of this feature will be readily apparent to members who frequently travel on business or pleasure.

'273 patent, col. 15, l. 56—col. 16, l. 3. By itself, neither this disclosure nor the remainder of the excerpts from the specification cited by Ziarno provides support for the transfer of information using data packets that are sent over a computer network via a variety of paths and reassembled into their proper order at the receiving end, as set forth in the district court's Markman ruling. Ziarno also cites Mr. Putnam's testimony that if he had built the network disclosed in the '273 specification in 1993, he "would have chosen the TCP/IP protocols" because they were "inexpensive, available off-the-shelf technology," and they "were very efficient and well-tested and proven." Trial Tr. at 44. This establishes at most that Mr. Putnam and Professor Poor disagreed as to what one of skill in the art would have concluded on reading the '273 specification. The jury was free to believe Professor Poor rather than Mr. Putnam; this mere difference of opinion does not undermine the substantial evidence supporting the jury verdict.

### B

Ziarno argues that the district court abused its discretion in stopping the rebuttal testimony of Mr. Putnam. We do not agree. The record simply reflects that the district court judge sustained an objection under Rule 403 to a demonstrative exhibit offered by Ziarno in rebuttal, subsequent to which Ziarno's attorney voluntarily ended his examination of Mr. Putnam. Trial Tr. at 96–98. Ziarno has failed to show that the district court abused its discretion.

### C

Ziarno also identifies inconsistencies in the jury's findings regarding invalidity under 35 U.S.C. §§ 102 and 103. Specifically, the jury found that dependent claim 51 was both anticipated and obvious even though its parent claim 48 was found neither anticipated nor obvious. This violates the "fundamental principle of patent law that 'dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.'" *Jeneric/Pentron, Inc. v. Dillon Co., Inc.,* 205 F.3d 1377, 1383, 54 USPQ2d 1086, 1090 (Fed.Cir.2000) (quoting *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1553, 10 USPQ2d 1201, 1208 (Fed.Cir.1989)). Furthermore, claim 21 was held not to be obvious, but was simultaneously held anticipated, which is inconsistent with the principle that an-

ticipation is the "epitome of obviousness," *Structural Rubber Products Co. v. Park Rubber Co.*, 749 F.2d 707, 716, 223 USPQ 1264, 1271 (quoting *In re Fracalossi*, 681 F.2d 792, 794, 215 USPQ 569, 571 (CCPA 1982)).

We apply the law of the regional circuit, in this case the Seventh Circuit, to the issue of inconsistent jury findings or verdicts. *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1563, 5 USPQ2d 1769, 1774 (Fed.Cir.1988). In the Seventh Circuit, a jury verdict will not be reversed "if the error is harmless, i.e., does not affect the substantial rights of the parties." *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 719 (7th Cir.2001) (citing Fed.R.Civ.P. 61); *see also* 28 U.S.C. § 2111 (2000) (providing that an appellate court "shall give judgment ... without regard to errors or defects which do not affect the substantial rights of the parties"). Because of our affirmance of the jury's finding that the asserted claims of the '273 patent are invalid for failure to satisfy the written description requirement, the inconsistencies in the further invalidity findings that Ziarno identifies do not substantially affect his rights. We decline to disturb the jury verdict on these grounds.

### D

In light of our disposition of the written description issue, we need not and do not reach the rest of Ziarno's arguments. Since we have affirmed the jury's finding of invalidity of the asserted claims, we need not and do not consider the claim construction arguments advanced by the Red Cross in its conditional cross-appeal.

### CONCLUSION

Because substantial evidence supported the jury's finding that the asserted claims of the '273 patent as construed were inval-

id for lack of written description support, we *affirm*.