**In re PARAMESWAR SIVARAMAKRISHNAN.**

**Appeal No. 81–607.**

United States Court of Customs and Patent Appeals.

April 1, 1982.

Rehearing Denied June 10, 1982.

Thomas W. Roy, Pittsburgh, Pa., for appellant.

Joseph F. Nakamura, Sol., and Harris A. Pitlick, Asst. Sol., Washington, D.C., for the Patent and Trademark Office.

Before MARKEY, Chief Judge, RICH, BALDWIN, MILLER, and NIES, Judges.

BALDWIN, Judge.

This is an appeal from the United States Patent and Trademark Office Board of Appeals (board), sustaining the examiner's rejection under 35 U.S.C. § 102 of claims 7, 13, and 18. We affirm.

## The Invention

The appealed claims are directed to a composition comprising the combination of an aromatic polycarbonate resin with a carboxylic acid metallic salt, the addition of which is said to enhance the resin's hydrolytic stability.[1] Claim 18 is illustrative:

> 18. A moldable aromatic polycarbonate consisting essentially of:
>
> a) an aromatic polycarbonate resin; and
>
> b) a cadmium salt of an organic acid selected from the group consisting of cadmium 2-ethylhexanoate and cadmium laurate, characterized in that said salt is soluble in said polycarbonate resin and present in an amount between 0.01 to 0.1% by weight based on the weight of said polycarbonate resin.

## Prior Art

The sole reference relied upon by the examiner and the board is U.S. patent No. 3,535,300, issued to C. L. Gable on October 20, 1970. Gable teaches a flame-resistant polycarbonate resin containing a metallic salt of the formula $M(X)_n$, where M represents a metal, X an anion rendering the

---

1. The patent application involved is serial No. 929,758, filed on July 31, 1978, for "Polycarbonate Having Improved Hydrolytic Stability."

metal soluble in the resin, and n the valence of M. Gable broadly discloses numerous suitable metals and anions,[2] so that a large number of salts are subsumed under the generic formula. Gable also classifies many specific examples of salts within the formula into five categories according to anionic moiety, and, in particular, lists some 20 "[m]etal salts of carboxylic acids," including cadmium laurate.

### The Proceedings Below

In her final rejection, the examiner stated that the appealed claims were fully met by Gable and, in addition, were rendered obvious under 35 U.S.C. § 103 over Gable. Before the board, however, the examiner withdrew the rejection under § 102, relying solely on the § 103 rejection. The board refused to sustain this rejection, stating that appellant had "demonstrated the unique character of [cadmium laurate] by comparative evidence which rebuts any presumption of obviousness of its incorporation into an aromatic polycarbonate." Instead, the board concluded that a § 102 rejection "must be deemed * * * proper when cadmium laurate is specifically named as [a] suitable additive amongst only a relatively limited, select group of salts" disclosed by Gable. Accordingly, the board reinstated the § 102 rejection pursuant to 37 CFR 1.196(b).

In a request for reconsideration, appellant took issue with the board's statement that Gable's specifying of cadmium laurate would have "suggested [that salt] to the artisan as a preferred species and, accordingly, [that] its use must be deemed to be disclosed by the prior art within the meaning of Section 102." Appellant argued that nothing in Gable would have directed one of ordinary skill to the metal salts of carboxylic acids over the approximately 70 other salts named by Gable. Moreover, appellant presented the declaration of Gable, the patentee, stating that cadmium laurate was included in the list of named salts simply as a representative compound, and not a pre-

ferred species, that the generically disclosed salts were expected to possess properties like those of the listed salts, and that the combination of polycarbonate resin and cadmium laurate was never actually made and tested. Nevertheless, the board on reconsideration, while withdrawing its statement regarding cadmium laurate's being a preferred species, adhered to its holding that the claimed subject matter lacked novelty.

### OPINION

Before us, appellant contends that the teachings of Gable constitute a "shotgun" disclosure of suitable salts which cannot anticipate the specific compound, cadmium laurate, in accordance with *In re Wiggins*, 488 F.2d 538, 179 USPQ 421 (CCPA 1973). Appellant also urges that Gable's exemplary enumeration of salts, including cadmium laurate, does nothing to narrow the generic teaching of usable additive compounds to a number sufficiently small to support a § 102(b) rejection under the rationale of *In re Petering*, 49 CCPA 993, 301 F.2d 676, 133 USPQ 275 (1962); *In re Schaumann*, 572 F.2d 312, 197 USPQ 5 (CCPA 1978), and related cases.

In *Wiggins*, the court held that a reference's listing of specific compounds within the scope of the appealed claims "constituted nothing more than speculation about their potential or theoretical existence," and, hence, was not a "description" of the compounds within the meaning of § 102(b). *In re Wiggins*, 488 F.2d 538, 543, 179 USPQ 421, 425 (CCPA 1973). In the present case, we fail to see how Gable's disclosure of polycarbonate resin with cadmium laurate can be considered "speculation" about the composition's "potential or theoretical existence." Gable indicates that the polycarbonates of interest were well known to the art, as was cadmium laurate, and there is no suggestion in the record that one of ordinary skill would have had any difficulty in understanding or following Gable's teachings concerning their combination. That Gable may not have actually reduced

2. Gable also specifies ten metals "which appeared to have the greatest effect on flame resistance of polycarbonates." One of these is cadmium.

the specific mixture of resin and cadmium salt to practice has no bearing on whether the mixture is "described in a printed publication" under § 102(b). *See e.g., Mannix Co. v. Healey*, 341 F.2d 1009, 1010 n.1, 144 USPQ 611, 612 n.1 (CA 5 1965); *Siegel v. Watson*, 267 F.2d 621, 624, 121 USPQ 119, 121 (CADC 1959); *Ritter v. Rohm & Haas Co.*, 271 F.Supp. 313, 341, 154 USPQ 518, 542 (S.D.N.Y. 1967). *Cf. In re Deters*, 515 F.2d 1152, 1155, 185 USPQ 644, 647 (CCPA 1975) (that a reference is a "paper patent" is irrelevant to its value as evidence of level of skill in the art); *In re Blake*, 53 CCPA 720, 724, 352 F.2d 309, 312, 147 USPQ 289, 291 (1965) (patent statute does not require commercial use of subject matter of a prior-art disclosure for that disclosure to qualify as a reference).

We also disagree with appellant's argument that *Petering* and its progeny require reversal of the board's finding. Indeed, the case for anticipation is stronger here than in *Petering*, where a vast number of permutations of substituent groups under a generic chemical formula was reduced to a subgenus of 20 compounds, including the claimed species, by recourse to "preferences" disclosed in the reference. In contrast, Gable broadly teaches a chemical mixture containing two components, resin and salt, and additionally discloses a specific salt, among others, for which appellant now claims to have discovered a use not appreciated by Gable. It may be, as appellant would have us believe, that Gable's naming of cadmium laurate, instead of any other suitable carboxylic acid salt, was fortuitous. Nevertheless, the fact remains that one of ordinary skill informed by the teachings of Gable would not have had to choose judiciously from a genus of possible combinations of resin and salt to obtain the very subject matter to which appellant's composition *per se* claims are directed. Consequently, we hold that the claimed subject matter is described by Gable under § 102(b).

Accordingly, the decision of the board is *affirmed.*

AFFIRMED.