**GENLYTE THOMAS GROUP LLC Plaintiff**

v.

**NATIONAL SERVICE INDUSTRIES, INC., et al. Defendants**

**No. CIV.A.3:00CV–174–S.**

United States District Court, W.D. Kentucky at Louisville.

Feb. 14, 2003.

James R. Higgins, Jr., Jeffrey A. Haeberlin, Middleton & Reutlinger, Thomas Patrick O'Brien, III, Frost Brown Todd, LLC, Louisville, Gerald C. Willis, Cassidy, Shade & Gloor, George P. McAndrews, James R. Nuttall, Matthew G. McAndrews, Gerald C. Willis, Jr., McAndrews, Held & Malloy, Chicago, for Genlyte Thomas Group LLC, plaintiff.

Mary Janice Lintner, Donald L. Cox, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, Clare Feler Cox, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, for NSI Enterprises, Inc. dba Lithonia Light-

ing Co, Acuity Lighting Group, Inc. dba Lithonia Lighting Co, Acuity Brands, Inc., defendants.

### MEMORANDUM OPINION

SIMPSON, District Judge.

This matter is before the court on motion of the defendant, National Service Industries, Inc., et al. (hereinafter collectively "Lithonia"[1]), for summary judgment of invalidity of U.S. Patent No. 5,057,979 (the "'979 patent"), the patent-in-suit in this action. Lithonia contends that it is entitled to judgment on the ground that the '979 patent was anticipated by an Underwriters Laboratory ("UL") design and safety standard, UL 1571.

 Anticipation is a question of fact. "To make such finding on summary judgment, the court must determine that no facts material to the question are disputed; or that even if all material factual inferences are drawn in favor of the non-movant, there is no reasonable basis upon which the non-movant can prevail." *Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 1577 (Fed. Cir.1991)( *citing, Cooper v. Ford Motor Co.,* 748 F.2d 677, 679 (Fed.Cir.1984); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court finds that there is no genuine issue of material fact concerning anticipation. We conclude that UL 1571 does not anticipate the invention of the '979 patent under 35 U.S.C. § 102(b).

Under 35 U.S.C. § 102, a patent is invalid where "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for

---

**1.** The caption utilizes the first-named defendant in the Second Amended Complaint. However, for purposes of clarity in this opinion, the defendants will be referred to collectively as "Lithonia," the company through which the accused products were manufactured and sold.

patent in the United States." In applying this limitation on patentability, the Federal Circuit has stated that

A patent is invalid for anticipation when the same device or method, having all of the elements contained in the claim limitations, is described in a single prior art reference. [citations omitted]. An anticipating reference must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by persons of ordinary skill in the field of the invention. [citations omitted].

*Crown Operations International, Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1375 (Fed.Cir. 2002).

There is no question that UL 1571 was published well over one year prior to the December 12, 1989 filing of the application which ultimately issued as the '979 patent. There is also no question that the patent examiner was not cited to and did not consider UL 1571 when considering the patent application.[2] Our decision on this motion is limited to the question of whether all of the elements of claim 17 of the '979 patent are present and clearly described in UL 1571, such that one skilled in the art would have recognized that subject matter. *Id.*

In order to address this question we start with the elements of claim 17[3]. In our earlier opinion on infringement, this court construed the claim to teach "a plastic plaster frame having an opening in which a lamp housing is mounted so that light from the lamp housing is projected through the opening, and having hangerways which are molded as one piece with the plastic frame for holding hanger bars on either side of the opening." Memorandum Opinion, DN 155, pg. 4.[4]

Lithonia contends that, element-by-element, each element of Claim 17 is present in UL 1571. Genlyte contends that the elements of the plastic plaster frame device, as arranged in Claim 17, cannot be found in the publication. The court agrees that the publication does not evidence the elements as arranged in claim 17 of the '979 patent.

Lithonia suggests that the plastic plaster frame consists of four distinct elements: (1) the recessed lighting frame member, (2) hangerways with said frame member, (3) plastic, and (4) molded/molded in one piece. See Lithonia's Claim Chart, pg. 13, and pgs. 12—14. Lithonia then attempts to find these elements within various sections of UL 1571[5] to show that each element was known in the art.

2. There is a pending motion for partial summary judgment by the plaintiffs which, in part, seeks a determination that the '979 patent is not unenforceable for failure of the plaintiffs to cite UL 1571 and U.S. Patent No. 4,475,147 in their prosecution of the application. This opinion does not address that motion and expresses no opinion on the issue of fraud on the Patent and Trademark Office.

3. Claim 17 is the only claim in issue in this case.

4. Lithonia urges that Claim 17 contains the element of elastomeric plastic. The infringement ruling eliminates this proposed construction. We also decline to adopt Lithonia's characterization of Claim 17 as "a prior art plaster frame made from plastic." As pointed out by Lithonia, this motion seeks a judgment of invalidity under § 102, not § 103. Comparison of other art vis-a-vis the patent-in-suit is not appropriate here. That is an inquiry to be undertaken under § 103.

5. Lithonia attempts to engraft UL 746C onto UL 1571 by arguing that UL 746C is incorporated by reference. The court will decline to extend the authority cited by Lithonia for this proposition. The cases cited are decidedly different on their facts. They do not persuade this court that the Federal Circuit meant to alter the clear language of § 102 which requires that all elements of a claim be contained in a single prior publication in order to find the invention to be anticipated. In this

Our construction given to claim 17 identifies a plastic plaster frame having hangerways which are molded as one piece with the plastic frame for holding hanger bars.

The law of anticipation requires that the prior publication describe the patented subject matter The Federal Circuit has stated that

> When the defense of lack of novelty is based on a printed publication that is asserted to describe the same invention, a finding of anticipation requires that the publication describe all of the elements of the claims, arranged as in the patented device. [citations omitted].

*C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1349 (Fed.Cir.1998); *Karsten Manufacturing Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1383 (Fed.Cir.2001). The court finds that, in looking for the subject matter of the claim within the confines of the publication, the focus must be on the combination of elements which achieves the integrated plastic plaster frame and hangerways; that is, the elements as they are arranged in the patent. Therefore, Lithonia's contention that integration of metal parts or molding of plastic was known in the art does not go far enough. The analysis does not address the question of whether *the combination* of elements was suggested or was sufficiently described in the publication for one skilled in the art to have recognized it. The court finds, as explained below, that Lithonia has not established that the elements of the claim, as arranged in the patented device, are present in UL 1571.

Lithonia points to a general section in the publication concerning the testing of plastics when used in fixtures. UL 1571,

section 54.1. There is nothing in this section relating specifically to plaster frames. Lithonia urges that section 54.1 implies the use of plastics in plaster frames since (1) the section states that plastics used for parts which provide structural support in a fixture must comply with the requirements of the section (UL 1571, section 54.1), and (2) plaster frames may provide structural support in a fixture. (Kusmer depo., pgs. 133–134). This implication can be justified only if the step would be evident from the text of UL 1571 to one skilled in the art to make a molded plastic plaster frame and hangerways ·device for a recessed fixture. The general section on plastics alone does not suggest any such step. It merely states that if structural parts are made of plastics, they must meet certain standards.

Lithonia contends that molding a plaster frame is taught in section 43.2, a section which states that a lamp housing in a recessed fixture may be "integral with components" Lithonia's interpretation fails for two reasons. First, the observation that a lamp housing may be integral with components says nothing about the structure of a plaster frame. Second, the lamp housing referred to in 43.2 is a metal housing. There can be no question that the lamp housing and any components with which it is integral are made of metal. Section 43.2 requires compliance with section 43.3 concerning sheet metal in order for such an integral enclosure to meet the standard.

Section 43.2 concerning a metal lamp housing and section 54.1 concerning the use of plastics have not been shown to bear a relationship to one another. Further, there has been no demonstration

instance, we are directed to more than one UL standard UL 1571 stands independent of UL 746C, despite the fact that UL 1571 refers the reader to UL 746C for further guidance on other safety standards. Therefore, we will

not consider UL 746C as incorporated by reference into UL1571. To the extent that Lithonia's motion relies upon UL 746C, the argument is rejected.

that, if considered together, these sections would reveal a molded plastic plaster frame and device to one skilled in the art. "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field in question." *Scripps Clinic,* 927 F.2d at 1576.

In order to find anticipation, the elements of the device must be described with sufficient clarity and detail to establish the existence of the patented subject matter either expressly or implicitly. The use of molded plastics in the construction of unitized plaster frames with hangerways is not sufficiently described in UL 1571 to either expressly or implicitly identify the invention as present in the art. There is no express suggestion in UL 1571 of the making of a one-piece molded plastic plaster frame and hangerway device as taught in Claim 17.

The court further concludes that UL 1571 does not sufficiently disclose the elements of claim 17 such that the combination was inherently taught to one skilled in the art.[6] As noted in *Continental Can Company USA, Inc. v. Monsanto Company,* 948 F.2d 1264, 1269 (Fed.Cir.1991), "[t]his modest flexibility in the rule that 'anticipation' requires that every element of the claims appear in a single reference accommodates situations where the common knowledge of technologists is not recorded in the reference; that is, where technological facts are known to those in the field of the invention, albeit not known

to judges." The doctrine of inherency requires that

> If the prior art reference does not expressly set forth a particular element of the claim, that reference still may anticipate if that element is "inherent" in its disclosure. To establish inherency, the extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." *Continental Can Co. v. Monsanto Co.,* 948 F.2d 1264, 1268 20 U.S.P.Q.2d 1746, 1749 (Fed.Cir.1991)"Inherency, however, may not established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Id.* at 1269, 948 F.2d 1264, 20 U.S.P.Q.2d at 1749 (*quoting, In re Oelrich,* 666 F.2d 578, 581, 212 U.S.P.Q. 323, 326 (C.C.P.A. 1981)).

*In re Robertson,* 169 F.3d 743 (Fed.Cir. 1999); *see also, Continental Can,* 948 F.2d at 1268.

Lithonia has offered no evidence to support an argument that the common knowledge of technologists in the field was such that it would have been inherently known to one skilled in the art to mold a plastic plaster frame and hangerways device for use in a recessed light fixture. In fact, the evidence concerning the 1994 proposal for the development and adoption of additional UL standards to be applied to polymeric recessed fixtures suggests that this was new territory. The safety features of polymeric recessed fixtures were previously unexplored or developed by Underwriters Laboratory.[7] If Underwriters Labora-

---

6. In its opening brief, Lithonia cites law concerning the doctrine of inherency. It does not identify what element or elements of the claim are inherently present in UL 1571. In its reply brief it appears to back off this approach to proving anticipation, however, we will address the point briefly in light of our finding that the elements of claim 17 are not expressly stated in the publication.

7. The 1994 proposal stated that "the ad hoc committee members also expressed interest in developing requirements for recessed fixtures employing one or more of the following made of polymeric material Plaster frames. While UL has Listed products with plastic subassemblies, there are no Listings for self-contained polymeric fixtures that meet the description outlined in this proposal."

tory had not considered plaster frames made of polymeric material, any argument that the subject matter of claim 17 was present even inherently in UL 1571 is seriously undercut.

For the reasons set forth herein, the motion of the defendants for summary judgment of invalidity (DN 82) will be denied. A separate order will be entered this date in accordance with this opinion.

### ORDER

Motion having been made and for the reasons set forth in the memorandum opinion entered herein this date and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendants, National Service Industries, Inc., et al., for summary judgment of invalidity (DN 82) is **DENIED.**